# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CHARMAINE ANDERSON** | * | **CIVIL ACTION NO.** **12-CV-2282** |
| *Plaintiff* | * | |
| | * | |
| *versus* | * | **JUDGE** |
| | | |
| **WAFFLE HOUSE, INC AND** | * | |
| **DONALD BALLARD, INDIVIDUALLY AND** | | |
| **IN HIS OFFICIAL** | * | |
| **CAPACITY AS SUPERVISOR OF/AND** | * | **MAG.        DIV.** |
| **WAFFLE HOUSE INC.** | | |
| | * | |
| *Defendant* | * | **JURY TRIAL REQUESTED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DAMAGES FOR SEXUAL HARASSMENT, SEXUAL BATTERY AND RETALIATION, AND DEMAND FOR TRIAL BY JURY

ON PETITION OF, **CHARMAINE ANDERSON,** a person of the full age of majority, domiciled in the Parish of St. Tammany, State of Louisiana, appearing herein through undersigned counsel, respectfully states as follows:

### JURISDICTION AND VENUE

1.  This action is brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment and to remedy retaliation against an employee for activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") and Louisiana state law, La. R.S. 23:301 *et seq*. and for Louisiana state all claims involving sexual assault and assault and threats of bodily harm by Defendant Supervisor Donald Ballard  and Waffle House, Inc. and venue is proper under Louisiana state law, also, under La. R.S. 23:303(a) which took place in

Slidell, Louisiana, Parish of St. Tammany, State of Louisiana all within the jurisdiction of this court.

2.    Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. § 2000e (5)(f) and (5)(g) and La. R.S. 23:301 *et seq.*

3.    Plaintiff has complied fully with all prerequisites and the jurisdiction of this court under Title VII.

4.    Jurisdiction of this court is proper under Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e (f) -(5)(e) and (5)(f)(3). Jurisdiction is claimed under La. R.S 23.301, state claims for sexual harassment, assault and threats of bodily harm against Petitioner by supervisor Donald Ballard, the Night Supervisor, who could hire and fire at Waffle House, Inc. and did effect her terms of her employment for which Defendants are strictly liable.

5.    This unlawful employment practice complaint all occurred within the district of the Eastern District of Louisiana, therefore venue is proper within this district, in accordance with Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e (f)(3)

## **PARTIES**

6.    **Plaintiff, Charmaine Anderson**, a person of the full age of majority, a female hired in July 2005 by Waffle House, and a resident of the State of Louisiana, filed a sexual discrimination charge against defendant, Donald Ballard, her night supervisor, who was working under the course and scope of his employment when he threatened to injure Petitioner with a large knife Plaintiff if she reported him for sexual harassment. Donald Ballard was known to Defendants and the District Manager to have asked for sex from several waitresses and took no action, offered to pay for sex to waitress Catelynn Pittman to watch her having lesbian sex at work (and after complaining of Ballard, was retaliated

2

against and taken off the work schedule like Petitioner was retaliated against), Ballard

sent a picture of his penis to Deeana Elizabeth Edwards a waitress, and Ballard offered

money for sexual favors to Nikki Bordelon. Waffle House's District manager who

conducted the investigations was romantically involved with Donald Ballard and

protected him. Due to a defective grievance procedure and a defective investigation of

these incidents with no action taken by Defendants and its District Manager, Ballard felt

he could even threaten to kill Petitioner with a knife and not be fired. Finally Slidell

Police arrested Ballard and he pled guilty to making threats on Petitioner's life  as

verified b Deanna Elizabeth Edwards.

7.      **Defendant, Donald Ballard, individually, and as supervisor of Charmaine Anderson,**

who was responsible for the direct supervision and hiring of employees, including

Charmaine Anderson during the daily operation of Waffle House, who is liable for said

damages to Plaintiff, jointly *insolido* with defendant, Waffle House for sexual

harassment, retaliation and threats of sexual harm if she did not grant sexual favors to

Supervisor Donald Ballard, of its agent, employee and proxy. Donald Ballard had a close

romantic relationship with the District Manager and was perceived to be a supervisor by

Petitioner who could take adverse action against her. Sure enough, after Petitioner

complained of Ballard's outrageous acts in the workplace and others had complained, she

was subjected to adverse action, taken off the schedule, written up for pretextual reasons

and terminated for pretextual reasons in retaliation.

8.      **Defendant, Waffle House, Inc.,** a foreign corporation, who is currently licensed and

doing business in the State of Louisiana, who is liable jointly *insolido* with defendant,

Donald Ballard, its agent, employee, proxy and supervisor, who committed sexual

harassment and made threats of bodily harm if she did not have sex with Defendant

Supervisor Donald Ballard Plaintiff during the course and scope of his employment.

Waffle House also failed to have a valid investigation due to improper relationship of the

District Manager doing a sham investigation and defendant Donald Ballard. Waffle

House, Inc. although it had a paper policy to prevent harassment, failed to properly

implement it at this location and with this District Manager over Ballard who negligently

supervised him. Employees were never properly trained in sex harassment at this location

where Petitioner worked. In effect, there was no policy at this location where Ballard felt

free to sexually harass patrons and Donald Ballard was known to use marijuana had it in

the workplace according to Catelyn Pittman, waitress and victim of sex harassment of

supervisor Ballard.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.     On December 9, 2011, petitioner's night supervisor, Donald Ballard, sent a personal text

message to petitioner's cell phone, which was an obscene photograph of his penis.  (See

picture of Donald Ballard's penis, Exhibit P-1, attached)  In the text message he wrote,

"He He!" (i.e. laughing) with the picture of his penis attached.  She told him, "That's not

funny, is that you?"  He responded, "Yes.  I would not look at another man."  This was

done during the course and scope of their employment during work hours. Ballard has a

special relationship with the District Manager and had no fear of disciplinary action.

10.    On December 10, 2011, after she returned to work the day after the incident she told him,

"I am sending that picture to corporate" and he said, "Us black people need to stick

together."  Later in the day, another waitress Deeana Elizabeth Edwards told Charmaine

Anderson and showed her a text message Ballard sent to tell Charmaine Anderson, that

"he had a big knife (which he did have as a cook at Waffle House) and for her to watch her back". Ms. Anderson went to the Slidell Police Station and reported it, and Charmaine Anderson gave them a copy of the picture of his penis, got his name, and Slidell deputies picked him up and arrested him. Deputy Devrone Vasser is the officer that arrested Donald Ballard at Waffle House. (See attached copy of the police report, Exhibit P-2) Donald Ballard plead guilty and served jail time for the threats. Waffle House Inc. failed to take proper measured to protect all the women in the Waffle House Inc. workplaces and merely transferred Ballard to other Waffle Houses, Inc., more concerned over profits than protection of its women in its workplaces.

11.    On December 15, 2011 she reported the incident to the corporate office of Waffle House, Case Manager, Sandy McAllister. Waffle House had Charmaine Anderson fill out a Sexual Harassment Questionnaire. (See attached Questionnaire, Exhibit P-3, dated January 1, 2012). Immediate and timely action to protect the women of Waffle House Inc. from a knife wielding Ballard who was know to use marijuana and making violent threats, was not taken timely.

12.    This was not the only act of sexual misconduct Donald Ballard conducted in the workplace at Waffle House. In November 2011, Nikki Bordelon, a waitress, was outside of Waffle House talking to Donald Ballard, in which she mentioned to him, "I am doing really bad with money right now." Donald Ballard attempted to give her $40 cash, and she said, "What's that for?" He told Ms. Bordelon that it was for him, and he told her he didn't want to have sex, he just wanted to watch her play with herself. So, she declined the money and left. This was done during the course and scope of his employment during working hours. Ms. Bordelon complained to the Hotline and filed a complaint

form one week after Charmaine Anderson filed her complaint.  Donald Ballard kept

harassing these women asking to see their private parts.  (See attached statement of Nikki

Bordelon dated February 12, 2012, Exhibit P-4)

13.  Charmaine Anderson reported her incidents of sexual harassment of  perceived

supervisor Donald Ballard to Jeffery Simpson and Karen Thomas District Manager that

has been seen to have a special relationship with Ballard.  The district manager for

Waffle House, who had a special improper  close relationship with Donald Ballard, ended

up firing Charmaine Anderson in retaliation for reporting her special  beau Donald

Ballard for calling in sick, which was false.  Petitioner took off the morning of January 4,

2012 because she had to register her son at Slidell High School, and she brought a note

from Slidell High School indicating this, which was not accepted by Waffle House Inc.,

which led to retaliatory terminating of Charmaine Anderson, stating she got fired due to

Violation of Attendance Control Policy.  (See attached letter dated January 4, 2012 from

Slidell High School, Exhibit P-5 and See attached Separation Notice, Exhibit P-6)

14.  After complaining of the incident to Waffle House's Corporate Headquarters, and filling

out the Sexual Harassment Questionnaire, still nothing was done.  Charmaine Anderson

was subjected to threats of physical harm by Donald Ballard, which Charmaine Anderson

reported the incidents to the police on December 22, 2011.  (See attached police report,

Exhibit P-2)  She made the police report with hopes of not being threatened  and killed by

Donald Ballard since Ballard was protected by Karen Smith District Manager and Waffle

House Inc. due to its managers improper actions and lack to timely actions to protect

waitresses at Waffle House from Ballard, his knife, his threats, his marijuana drug

induced rage and his continual outrageous criminal acts of sex harassment and sending

pictures of his penis over his cell phone in violation of federal and state laws on such acts as well as making death threats to Petitioner over a cell phone.

15.   On December 23, 2011, Charmaine Anderson received a letter from Valencia Porter, Customer Service Supervisor for Waffle House, sending her the Sex Harassment Questionnaire, and stating that complaints of sexual harassment will not be tolerated, and that an investigation is going to be done.  (See attached letter of Valencia Porter, Exhibit P-7) .The investigation was defective and Ballard was not timely terminated nor separated from Anderson who had to have contact with him again putting her in great danger.

16.   On December 30, 2011, Charmaine Anderson spoke to Valencia Porter and she told Charmaine Anderson they were in the process of moving him to another store. Charmaine Anderson called her because she was scared out of her mind to work on New Year's Eve because Donald Ballard was still working there.  Valencia Porter confirmed with Charmaine Anderson that it was okay for her to work on New Year's Eve because Donald Ballard was moved to another store. But Ballard was still working there.

17.   On December 31, 2011, Charmaine Anderson went to work and Donald Ballard was walking out as she was pulling in the driveway of Waffle House Inc..  Waffle House Inc. did not move Donald Ballard to another location timely nor fire him for committing criminal acts in and out the workplace it knew or should have known about.  Charmaine Anderson called corporate headquarters and complained that Donald Ballard was still working there and that she was frightened. No timely action was taken and a defective investigation was done.

18.    On December 31, 2011, New Year's Eve, Charmaine Anderson went to work and her nerves were so bad and stomach was very upset and she had to work so scared and she really believed Donald Ballard was threatening her life. She was scared physically and mentally causing Post Traumatic Stress Syndrome and requiring psychiatric treatment, which she still received. Waffle House Inc. did not remove him from the location Charmaine Anderson was working timely and conducted a defective investigation due to its District Manager's negligence.

19.    On January 1, 2012, Jeff Simpson, Manager called and told Charmaine Anderson again, that Donald Ballard will not be at the store again.

20.    On January 6, 2012, the Slidell detective called Charmaine Andersons and told her that they arrested Donald Ballard at Waffle House. Waffle House Inc. failed to protect Petitioner and the other women at Waffle House Inc.

21.    Prior to Charmaine Anderson being retaliated against and terminated on March 5, 2012, she complained to numerous managers and supervisors of Waffle House, including Waffle House's Corporate Office, in which they gave her a Sexual Harassment Questionnaire to fill out regarding the sexual harassment. Defendants/Corporate notified her that they would remove him and send him to another store. So, therefore Waffle House did not discipline him in any way nor did they reprimand Donald Ballard. He was not properly suspended, nor terminated, but allowed to still work for Waffle House, to possibly harm other women and still leaving him the opportunity to sexually harass other female employees. Ballard constantly smelled of marijuana at work and Defendants knew or should have known of his violent propensities and sexual harassment of women at Waffle House Inc.

22.   After reporting the sexual harassment, Charmaine Anderson would be retaliated against by Waffle House and started receiving Last Chance Notices, one was on January 22, 2012 for Failure to Perform Assigned Duties- "Excessive amounts of tickets with total not calculated right or not completely charges";  and the second one February 26, 2012 for Violation of Attendance Control Policy- "Too many call ins to count, one was on Black Monday, the day before Mardi Gras, which is grounds for dismissal."  She was terminated in retaliation for her complaints about the sexual harassment, not due to these two Last Chance Notices.  Her termination date is March 5, 2012.  Before Charmaine Anderson reported the acts of sexual harassment by Donald Ballard, Ms. Anderson was never written up nor did she have any suspensions or reprimands for any serious violations at Waffle House, Inc., in her seven (7) years working for Waffle House.

23.   Due to the allegations mentioned above, Donald Ballad committed sexual harassment and death threats on Petitioner and made sexual harassment remarks to other waitresses at Waffle House's with no action take, while under the course and scope of both of their employment with Waffle House.

24.   On January 19, 2012, Charmaine Anderson filed a EEOC Intake Questionnaire, and then filed her first Charge of Discrimination with the EEOC, No. 461-2012-00572 on February 15, 2012 for retaliation and sex discrimination; she filed her second Charge of Discrimination with the EEOC, No. 461-2012-00803 on March 2, 2012 for retaliation; and she filed her third Charge of Discrimination, No. 461-2012-00970 on March 28, 2012 for retaliation and sex discrimination.  (See attached EEOC Charges and Questionnaire, Exhibit P-8)

25.    A Right to Sue letter has been issued on June 21, 2012 for all claims by the EEOC (Exhibit P-9 attached). Defendant, Waffle House employed Plaintiff, Charmaine Anderson since July 2005 and during the seven years prior to the sexual harassment incidents, she was never reprimanded, suspended, written up, nor disciplined for any misconduct. Charmaine Anderson has been a good employee throughout the years with Waffle House, and then retaliated against her after her complaints of sexual harassment. Petitioner was terminated on March 5, 2012.

26.    Petitioner pleads retaliation due to false accusations they listed on her Separation Notice, when in fact, she was being retaliated against for complaining to the corporate headquarters of Waffle House regarding sexual harassment of Donald Ballard. Throughout Charmaine Anderson's employment she was a good employee, and now she faces substantial consequences due to defendant, Donald Ballard, and she stands to lose her reputation, and is undergoing medical treatment and has been humiliated causing the need for her to go to medical treatment due to Donald Ballard's threats with a knife, and the sexual misconduct of Donald Ballard.

27.    Charmaine Anderson is undergoing psychiatric treatment with a psychiatrist Dr. Padmini Nagaraj. The full extent of her damages and injuries are not known as of date.

28.    There was never any sexual harassment training nor any sexual harassment material given to Donald Ballard or any other employees of this Waffle House Defendant, Waffle House. Deena Edwards for example never received training in sexual harassment. Catelyn Pittman never received training in sexual harassment. Ballard's training if he got any was certainly defective. The sex harassment policy was defective and not implemented at this Waffle House where Petitioner worked and Waffle House is strictly

liable for said harassment and acts of Ballard that all arose out of and but for his working at Waffle House, Inc.

29.    Charmaine Anderson will require future mental health treatment and her loss wages are not known at this time. Her future wages are also not known at this time. Petitioner was retaliated against after she reported Donald Ballard's sexually harassment and sexual discrimination with the EEOC and to Waffle House's Corporate Headquarters. This resulted in her being terminated from her position, which was in retaliation and then she filed an additional retaliation complaint with the EEOC in addition to her original charge of sexual harassment and retaliation.

## FIRST CAUSE OF ACTION RETALIATION DUE TO SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

30.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 29 of this Complaint with the same force and effect as if set herein.

31.    Defendants have retaliated against Plaintiff and have denied her opportunities for employment on the basis of her having complained of the sexual harassment by Donald Ballard, which is in violation of Title VII.

32.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory practices unless and until this Court grants relief. Petitioner is currently under the care of a psychiatrist and has ongoing post-traumatic stress syndrome and is taking prescription anti-depressants due to this incident sued upon.

33.    In 1980, the EEOC issued guidelines stating, "sexual harassment is a form of sex discrimination that is prohibited by Title VII." The EEOC guidelines explain in detail

that sexual harassment could take the form of either 1) An economic "quid pro quo" where an employers subjection to sexual conduct is linked to the grant or denial of job benefits, such as getting or retaining a job, or receiving a favorable performance review or promotion; or 2) created a hostile "environment" where the sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment [29 C.F.R. §1604.11 (a) and *Meritor Sav. Bank, FSB v. Vinson (1986)* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404-2406]. It is important to note that in the United States Supreme Court decision in *Meritor,* it held that sexual harassment creating an intimidating or hostile working environment, but not resulting in any tangible loss of job, position, or benefit, violates Title VII. To prove Title VII violations on the grounds of *quid pro quo,* an employee must prove:

1) The employee was subject to *unwelcome* sexual advances, conduct or comments by a supervisor with immediate or successively higher authority over the employee;

2) The harassment complained of was based on sex; and

3) The harassment affected tangible aspects of the employee's compensation, terms, or conditions of employment. (See *Henson v. City of Dundee (*11th Cir. 1982) 682 F2d. 897; *Karibian v. Columbia Univ.* (2nd Cir. 1994) 14 F3d 773.

   This location has no policy implemented and it was a mere "paper policy" at this facility where Petitioner worked.

## SECOND CAUSE OF ACTION
## UNLAWFUL DISCRIMINATORY EMPLOYMENT PRACTICES

34.  Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 33 of this Complaint with the same force and effect as if set herein.

35.  The above acts and practices of the Defendants constitute unlawful discriminatory employment practices within the meaning of Louisiana Employment Discrimination Law, La. R.S. 23:301 et al. for sexual harassment by supervisor Ballard.

36.  As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until this Court grants relief.

**THIRD CAUSE OF ACTION**
**LACK OF POLICY FOR SEXUAL HARASSMENT, DISCRIMINATION AND
RETALIATION**

37.  Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 36 of this Complaint with the same force and effect as if set herein.

38.  Defendants failed to have a viable policy and procedures in place for sexual harassment, sexual discrimination and retaliation.  There was a paper policy at this Waffle House due to Donald Ballard have a improper, conflicting, special, romantic, close personal relationship with the District Manager. Catelynn Pitman had heard widespread rumors that District Manager Karen and Ballard were sleeping together and making the waitresses at this Waffle House why he was not fired for all his outrageous sexual acts and threats against Petitioner. The women of Waffle House at this location, feared retaliation due to no policy being implemented and enforced at this location. There was no adequate, recurrent nor sex harassment  training given to Charmaine Anderson, Catelyn Pittman, Deena Edwards, Nikki Bordelon or other employees or Donald Ballard at any time in sexual harassment or anti-retaliation policies during her employment.

39.   Waffle House hired Charmaine Anderson in July 2005.  Plaintiff was hired as a waitress, who was working under the direct supervision of Donald Ballard, who sexually harassed, petitioner, during the course and scope of employment during work hours by texting a picture of his penis to her cell phone for which Defendant is vicariously liable under La. C.C. 2315 and La. C.C. 2320.   Petitioner refused to give in to the demands of her supervisor, defendant Donald Ballard.  By Proxy and Supervisor, Donald Ballard, subjected her to foul, nasty verbal remarks, threats with a knife, and continually sexually harassed her during working hours.  Ballard was having an improper relationship with the Karen Thompson the District Manager and other women at this location of Waffle House Inc. knew it and feared retaliation if they complained. This is a classic case of *quid pro quo* sexual harassment, creating a hostile work environment at this Waffle House.  After Petitioner complained to Donald Ballard's supervisors, Jeffrey Simpson, Karen Thompson, District Manager and then to Sandy McAllister, Case Manager from Waffle House Corporate Headquarters, about the incidents of sexual harassment, they said they would remove Donald Ballard from the location she worked, but didn't then she received two Last Chance Notices and were terminated shortly thereafter on March 5, 2012. Therefore she was forced to work under his supervision, and there was no sexual harassment policy nor did they provide any training in sexual harassment at Waffle House.   These allegations are all in violation of Title VII.  Therefore punitive damages are appropriate.

40.   As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer monetary damages and damages for Defendants not having a viable policy and procedures in place for sexual harassment and retaliation.

41.    Plaintiff has suffered and will continue to suffer unless and until this Court grants relief for punitive damages, including reasonable attorneys' fees and costs.  Due to Donald Ballard being a Proxy and direct supervisor of petitioner, *Farragher* is not available as a defense.  Defendants have no defense. The investigation done was defective due to the conflicting romantic relationship between Donald Ballard and the District Manager for Waffle House which was perceived to in fact occurring to the women of Waffle House at this location an the Waffle House staff who investigated her complaints failed to act timely to protect Petitioner and the other waitresses. Defendant, Waffle House is strictly liable for Donald Ballard's gross acts of sexual harassment and threats to do bodily harm on petitioner and its agent's retaliation against her.  This type of behavior is premeditated and unjustifiable- especially by a Proxy/direct supervisor.  A substantial punitive and compensatory damage award should be awarded to Plaintiff.


### FOURTH CAUSE OF ACTION
### COMPENSATORY AND PUNITIVE DAMAGES UNDER
### TITLE VII ARE ALLOWED

42.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 41 of this Complaint with the same force and effect as if set herein.

43.    While Waffle House employs more than 300 employees, and the Title VII caps on compensatory and punitive damages take an effect, Title VII also allows for recovery of uncapped compensatory damages for state causes of action under La. C.C. 2315, La. C.C. 2320 and for state charges of sexual harassment.  (See Title IX Education Amendments of 1972 Sect. 901-902 as amended, 20 U.S.C. Sect. 1681- 1688).  Charmaine Anderson stated claims for threats of assault and battery by Defendant, Donald Ballard if she did

not grant him sexual favors.  Charmaine Anderson has large uncapped state law claims

for intentional infliction of emotion distress and negligent hiring and supervision, and

threats of physical harm-- all of which claims are unlimited compensatory damage claims

to be considered by the federal court and will be awarded due to the outrageous conduct

of defendants.  Pendant state law discrimination claims in this federal court complaint

allows larger amounts of awards than and Title VII cap that would be present.

44.    Under Title VII, the total that can be awarded for compensatory and punitive damages

may not exceed $300,000 in cases of employers of 300 employees. Under 42 U.S.C.

§1981 a. Damages in Cases of Intentional Discrimination in Employment (b)(3)(A), it

should be noted, that back pay and front pay are not treated as compensatory damages,

thus are not subject to these damage caps.  *Pollard v. E. 1. Du Pont de Nemours & Co.,*

532 U.S. 843, 848, 121 S.Ct. 1946, 1949; *Johnson v. Spencer Press of Maine, Inc.* (1st.

Cir. 2004) 364 F.3d 368, 378.  Note there is no cap under state sexual harassment under

La. R.S. 23:301 and for state causes of assault and battery for her rape and multiple

sexual battery nor under La. C.C. 2315 and La. C.C. 2322.

45.    Charmaine Anderson's damages clearly exceed $300,000 for compensatory and punitive

damages.  She has sustained humiliation, pain and suffering, and mental anguish.  She is

diagnosed with post-traumatic stress syndrome, major depression and anxiety.

## SIXTH CAUSE OF ACTION
## VICARIOUS LIABILITY AGAINST DEFENDANTS EMPLOYEE AND SUPERVISOR
## DONALD BALLARD, MAKES DEFENDANTS STRICTLY LIABLE

46.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1

through 45 of this Complaint with the same force and effect as if set herein.

47.   Donald Ballard was a direct supervisor of Petitioner.  Donald Ballard was still employed

by Waffle House after it knew of his criminal acts in and outside the workplace, and no

action was timely taken and no action was taken by Waffle House Inc. before Ballard was

arrested and jailed,  and was not removed from the workplace to protect all female

employees by Waffle House. Finally he was arrested, pleads guilty to criminal charges

and served jail time. Charmaine Anderson was subjected to working under a hostile work

environment when they told Charmaine Anderson that they would remove Donald

Ballard from the store she was working at to another location, but didn't, forcing

Charmaine Anderson to still work under the supervision of Donald Ballard, in which she

was fearful of him for him threatening her with a knife after she reported his acts of

sexual harassment to upper management.  Waffle House corporate was investigating

these allegations of sexual harassment, but did nothing to Donald Ballard.  Charmaine

Anderson had to work under his supervision during the time of the investigation, and

never had any other options.  The federal courts have held employers liable for many

years, if management does nothing to stop the sexual harassment/discrimination seen in

*Harris v. Forklift Systems,* 510 U.S. 17 (1933).  Medical treatment is not necessary to

recovery in hostile environments but Charmaine Anderson has such treatment and

medications for post-traumatic stress syndrome diagnosis.  Charmaine Anderson is still

undergoing mental health treatments for her anxiety, major depression and post-traumatic

stress syndrome caused by being forced to work under hostile work conditions.  Federal

courts impose vicarious liability in sexual harassment cases, where the employee suffers

a tangible job action, which stated, "the soundness of basic principles." *Meritor v. Vinson,*

477 U.S. 57 (1986).  In a tangible employment action by a supervisor, such an defendant

George Davis, who was supervisor for plaintiff, an employer such as Defendants are strictly liable, "regardless of whether the employer knew or should have known of his harassment and regardless of whether the employee took remedial steps in the harassment after learning of it." *Reinholdt v. Common Wealth of Virginia,* (4 Cir. 1998) 152 F.3d 172, 174, 175).

48.     In *Ackel v. National Communications, Inc.,* 339 F.3d 376 (5th Cir. Aug. 1, 2003) held, "the court made it clear that it was not abandoning the reasoning and analysis of *Harris* and these earlier cases." In *EEOC v. Burlington Medical Supplies, Inc.,* 536 F.Supp. 2d 647, 650 (E.D. Va. 2008), it was made clear that the Supreme Court did in fact, fully endorse the proxy alter ego argument.

49.     The Fifth Circuit described the proxy exception in *Ackel*, 339 F.3d 376, 383, "we read the Supreme Court's opinions in *Faragher* and *Ellerth* as the Seventh Circuit did in *Johnson v. West,* 218 F.3d 725 (7th Cir. 2000), that the employer is vicariously liable for its employee's activities in two types of situations: 1) there is a tangible employment action or, 2) the harassing employee is a proxy for the employer.

## PLAINTIFF'S DAMAGE ASSESSMENTS

50.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 49 of this Complaint with the same force and effect as if set herein.

51.     The proximate cause-in-fact of Plaintiff's injuries and suffering such damages, was the negligent and intentional conduct of the Defendants, listed above, which are all in violation of Title VII and in violation of La. R.S. 23:301, including:

1)      Sexual Discrimination;

2)     Sexual Harassment;

3)     Maintaining a hostile work environment for women;

4)     Retaliatory Termination (but not under state law only federal law);

5)     Negligent hiring and screening

6)     Threats of Sexual assault

7)     Threats of Sexual battery

8)     *Quid Pro Quo* Sexual Harassment Humiliation and Embarrassment;

9)     Failure of Waffle House to monitor, investigate and to implement proper training its sexual harassment policy for its employees.

10)    Failure to do a proper investigation.

11)    Failure to take timely action to protect female employees at this location and the location where they finally untimely transferred Ballard.

Any and all other negligent and intentional acts that may be used at the trial of this matter.

52.   As a result of Defendant's discriminatory acts, Plaintiff has suffered a loss of income and unemployment benefits, employment benefits, emotional distress, pain and humiliation, embarrassment, ridicule, damage to her employment record, past and future mental anguish, and damages due to retaliatory termination by being made to work in a hostile work environment, and offered to provide *quid pro quo* sexual favors to Donald Ballard, proxy and direct supervisor of Plaintiff, subjecting Plaintiff to the extreme and outrageous conduct of Donald Ballard, alter ego and proxy, and a perceived supervisor at Waffle House and Plaintiff will continue to suffer from these consequences unless and until this Court grants relief for the above and intentional acts of Defendants.

53.   Petitioner did not knowingly sign any arbitration agreement nor knowingly consent to arbitration. In the alternative, Petitioner pleads if Defendant produces any arbitration agreement Petitioner pleads error, mistake, misrepresentation and lack of consent that vitiates any such arbitration agreement if any exists and is produced by Defendants.

## **RELIEF FOR DAMAGES**

54.   Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 53 of this Complaint with the same force and effect as if set herein.

55.   Plaintiff itemizes her damages as follows:

   1)   Past lost wages;

   2)   Future lost wages;

   3)   Past loss of employment benefits;

   4)   Past and future emotional distress;

   5)   Past and future humiliation;

   6)   Past and future embarrassment and ridicule;

   7)   Past and future mental anguish;

   8)   Threats of Sexual assault

   9)   Threats of Sexual battery

   10)  Assault with a knife and threats

   11)  Wrongful and retaliatory termination under Federal law; and

   12)  Punitive damages, including reasonable attorneys' fees and costs.

Pursuant to requirements of La. R.S. 23:303(c) plaintiff provided written notice to defendants through EEOC charges filed in an attempt to amicably settle the matter to no avail.

Plaintiff prays for trial by jury and states her damages are reasonable on the premises, and which said damages exceeds the amount required for trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a) Declaring that the acts and practices complained of herein are in violation of Title VII;

b) Declaring that the acts and practices complained of herein are in violation of La. R.S. 23:301 *et seq.*, the Louisiana Employment Discrimination law and La. Criminal law of sexual assault and sexual battery;

c) Enjoining and permanently restraining these violations of Title VII, and requiring Defendants implement a viable sexual harassment policy and training for employees to end *quid pro quo* sexual harassment of AB Clean, which endangers female employee's safety and care;

d) Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

e) Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's discriminatory and retaliatory treatment of her, and make her whole for all earnings she would have received but the defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, pension, and lost benefits;

f) Awarding Plaintiff compensatory and punitive damages;

g)  Awarding Plaintiff costs of this action together with reasonable attorneys' fees as provided by §706(k) of Title VII, 42 U.S.C. §2000e-6(k);

h)  Declaring that the acts and practices complained of herein are in violation of La. R.S. 23: 301;

i)  Directing all Defendants, Waffle House and Donald Ballard to pay plaintiff compensatory damages and damages for her mental anguish and humiliation; and

j)  Granting such other and on further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Respectfully Submitted,

*s/ Glenn C. McGovern*
Glenn C. McGovern (Bar# 9321)
Attorney for Charmaine Anderson
2637 Edenborn Ave., Suite 101
Metairie, LA 70002
Mailing address: P.O. Box 516
Metairie, LA 70004-0516
Phone: (504) 456-3610
Facsimile: (504) 456-3611
e-mail gcmcg@mac.com

VERIFICATION

I Petitioner Charmaine Anderson verify the above is true and correct to the best of my knowledge.

Charmaine Anderson Petitioner

PLEASE ISSUE SUMMONS FOR THE FOLLOWING:

1.    Waffle House, Inc.
      Through its registered agent in Louisiana;
      Incorp Services, Inc.
      3867 Plaza Tower Drive, 1st Floor
      Baton Rouge, Louisiana 70816

2.    Donald Ray Ballard
      Through his employment:
      Waffle House, Inc.
      1100 E Gause Blvd.
      Slidell, LA 70461

VERIFICATION

I  Petitioner Charmaine Anderson verify the above is true and correct to the best of my knowledge.

_____

Charmaine Anderson Petitioner

PLEASE ISSUE SUMMONS FOR THE FOLLOWING:

1.   Waffle House, Inc.
     Through its registered agent in Louisiana:
     Incorp Services, Inc.
     3867 Plaza Tower Drive, 1st Floor
     Baton Rouge, Louisiana 70816

2.   Donald Ray Ballard
     Through his employment:
     Waffle House, Inc.
     1728 Gause Blvd.
     Slidell, LA 70461