UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARMAINE ANDERSON                          CIVIL ACTION

VERSUS                                      NO: 12-2282

WAFFLE HOUSE, INC. ET AL.                   SECTION: "J"(4)

## ORDER AND REASONS

Before the Court is Defendant, Waffle House Inc. ("Waffle House")'s Motion to Dismiss or Stay the Proceedings and Compel Arbitration. **(Rec. Doc. 19)** Plaintiff, Charmaine Anderson, has opposed the motion. (Rec. Doc. 23) Waffle House has replied. (Rec. Doc. 32) The motion was set for hearing on the briefs on Wednesday, January 2, 2013.[1] In its motion, Waffle House seeks an order dismissing Plaintiff's claims or staying the litigation and compelling Plaintiff to arbitrate the claims asserted in this litigation. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for reasons expressed more fully below, that the Defendant's

---

[1] This motion was originally referred to Magistrate Judge Roby and set for hearing on the briefs on January 2, 2013. (Rec. Doc. 19) However, on January 8, 2013, the Court vacated the case referral to the Magistrate Judge. (Rec. Doc. 36)

motion should be **GRANTED**.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On September 14, 2012, Plaintiff filed the instant lawsuit against her supervisor, Donald Ballard, and her employer, Waffle House, arising out of Ballard's alleged sexual harassment of Plaintiff while she was employed as a waitress at a Waffle House in Slidell. (Rec. Doc. 1) Plaintiff asserted claims for sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Louisiana state law, La. R.S. 23:301 *et seq.*, as well as claims for sexual assault and threats of bodily harm under Louisiana law. (Rec. Doc. 1, 1). Although it is unclear when Anderson began her initial employment with Waffle House,[2] the parties agree that Anderson separated from and returned to work at Waffle House as a waitress multiple times between the date of her initial hire and her ultimate termination in March of 2012. (Rec. Doc. 19-1, p. 2; Rec. Doc. 23, p. 2-3) On September 29, 2009, Anderson entered into an Arbitration Agreement with Waffle House, which was signed by Waffle House through its Vice President. (Arbitration Agmt., Rec. Doc. 32-1) The Arbitration Agreement states in pertinent part:

---

[2] Plaintiff asserts that she was initially hired in July of 2005. (Rec. Doc. 1) Waffle house asserts that Plaintiff was hired in March of 2007. (Rec. Doc. 19-1)

Waffle House (as defined below) and I hereby agree:

...

2. **Claims covered by this Agreement.** That Waffle House and I will resolve by arbitration *all claims and controversies ("claims"), past, present, or future, whether or not arising out of my employment or termination from employment, that I may have against Waffle House or against its officers, directors, employees or agents in their capacity as such or otherwise,* or that Waffle House may have against me. *The claims that are arbitrable*:

- are those that, in the absence of this Agreement, would have been heard in a court of competent jurisdiction under applicable state or federal law; and
- ...
- *include, but are not limited to*, claims for wages or other compensation due under the Fair Labor Standards Act or state law equivalent; claims for workers' compensation benefits arising from an injury or illness occurring when my principal place of employment is within the state of Texas; claims for breach of any contract or covenant whether express or implied; *tort claims; claims for discrimination or harassment, including but not limited to*, race, color, *sex,* sexual orientation, pregnancy, religion, national origin, age, marital status, military status or affiliation, or medical condition, handicap or disability, whether *under Title VII of the Civil Rights Act of 1964*, the Americans with Disabilities Act of 1990, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Uniformed Services Employment and Reemployment Rights Act, the Family and Medical Leave Act, or any other federal, state or local statutes; *claims for retaliation arising from or concerned with such laws or statutes;* claims arising from or concerned with various stock ownership plans, stock option plans, or stock option bonus plans offered by Waffle House; claims for benefits, except claims under an employee benefit plan that either specifies that its claims procedure shall culminate in an arbitration procedure different than this one or is underwritten by a commercial insurance carrier

3

> which decides claims; *claims for violation of any*
> *federal, state or other governmental law, statute,*
> *regulation or ordinance, except claims excluded*
> *elsewhere in this Agreement.*

(Arbitration Agmt., Rec. Doc. 32-1, p. 1, ¶ 2) (italics added).

Paragraph 12 of the Arbitration Agreement provides "[t]his is the complete agreement of the parties on the subject of arbitration of disputes except for any arbitration agreement in connection with any benefit plan," and that "[e]xcept as provided in paragraph 15 below, this Agreement can only be revoked by a writing signed by both parties which specifically states an intent to revoke this Agreement." (Arbitration Agmt., Rec. doc. 32-1, p. 3, ¶ 12) Paragraph 15 provides in pertinent part:

> [m]y agreement to accept arbitration can be revoked at
> any time within 7 days of my signing this Agreement,
> but such revocation must be submitted in writing and
> will result in my immediate termination, demotion
> and/or denial of consideration for employment . . . If
> this Agreement is not properly revoked by me within the
> 7-day time period described above, I understand that
> this Agreement will remain valid and enforceable unless
> modified by Waffle House pursuant to Paragraph 12 or
> unless Waffle House and I execute a subsequent
> arbitration agreement...

(Arbitration Agmt., Rec. Doc. 32-1, p. 3, ¶ 15)

Paragraph 12 also expressly provides that "[t]his Agreement shall survive termination of my employment or expiration of any benefit plan." (Arbitration Agmt., Rec. Doc. 32-1, p. 3, ¶ 12) The Arbitration Agreement also expressly specifies that "[t]his is an arbitration agreement, not an employment agreement. This Agreement does not in any way alter the 'at-will' status of my

4

employment." (Arbitration Agmt., Rec. Doc. 32-1, p. 3, ¶ 14)

In addition to signing the Arbitration Agreement, Plaintiff initialed the Arbitration Agreement immediately below a provision stating in bold capital letters: "**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ *ALL 4 PAGES* OF THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, AND THAT I HAVE ENTERED INTO IT VOLUNTARILY. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AM GIVING UP MY RIGHT TO A JURY TRIAL**." (Arbitration Agmt., Rec. Doc. 32-1, p. 4) (emphasis original).

### PARTIES' ARGUMENTS

Waffle House moves for an order dismissing or staying Plaintiff's action and compelling arbitration based on the provisions of the Arbitration Agreement between Plaintiff and Waffle House. Waffle House argues that the Arbitration Agreement is valid and enforceable and that the Title VII and Louisiana law violations Plaintiff alleges in this suit are expressly covered by the Arbitration Agreement. First, Waffle House asserts that the parties formed a valid, enforceable arbitration agreement. Waffle House argues that the validity of the arbitration agreement should be decided under Georgia law, pursuant to a choice-of-law provision in the arbitration agreement, and that the agreement is a valid, enforceable contract under Georgia law. Waffle House alternatively argues that should the court find that the law of Plaintiff's residence, Louisiana, applies, then the

Arbitration Agreement is also valid and enforceable under
Louisiana law, citing La. Rev. Stat. § 9:4201 and Harris v.
JCPenney Co., Inc., No. 07-9675, 2008 WL 90038, at *1 (E.D. La.
Jan. 8, 2008). Second, Waffle House argues that Plaintiff's
claims that she was the victim of sexual harassment,
discrimination, retaliation, and various torts under Louisiana
law are all within the scope of the Arbitration Agreement,
because they are expressly identified as arbitrable in Paragraph
2 of the parties' Arbitration Agreement.

In her opposition, Plaintiff explains that she signed the
Arbitration Agreement at issue on September 29, 2009, was
subsequently terminated on July 7, 2010, and was thereafter re-
hired on March 17, 2011. Although Plaintiff asserts that there is
no choice-of-law issue in this case, she implicitly argues that
Louisiana law applies to determine whether the parties formed a
valid arbitration agreement by citing Louisiana authorities and
arguing that she did not consent — as required to form a valid
contract under Louisiana law  — to arbitration. Specifically,
Plaintiff argues that she never consented to arbitrate her claims
and that there is no valid Arbitration Agreement in existence,
because: (1) her termination on July 7, 2010 extinguished the
Arbitration Agreement signed on September 29, 2009, and (2) she
never signed a new arbitration agreement subsequent to her rehire
on March 17, 2011. (Rec. Doc. 23, p. 3-4) In support of her

argument, Plaintiff cites several cases, which she asserts stand for the proposition that an expired contract is unenforceable, including <u>United Teachers of New Orleans v. Orleans Parish School Board</u>, 355 So. 2d 899 (La. 1978) and <u>Litton Financial Printing Div. v. NLRB</u>, 501 U.S. 190 (1991). Plaintiff also cites <u>Frank v. 84 Components Co.</u>, No. 02-14, 2002 U.S. Dist. LEXIS 11218 (S.D. Ind. 2002), a case in which an Indiana district court denied a motion to stay pending arbitration, and <u>Matterhorn, Inc. v. NCR Corp.</u>, 763 F.2d 866 (7th Cir. 1985) in support of her argument that the Defendant's motion should be denied.

In reply, Waffle House argues that Plaintiff's extinguishment argument conflicts with the language of the Arbitration Agreement and lacks support in the relevant jurisprudence. Waffle House asserts, relying on multiple provisions of the Arbitration Agreement, that there is ample evidence that the parties did not intend for the Agreement to expire due to any break in the Plaintiff's employment with Waffle House. Moreover, Waffle House argues that Plaintiff was fully aware that the Arbitration Agreement was intended to survive any breaks in her employment with Waffle House based on the presence of her signature and initials on the Arbitration Agreement. Waffle House also argues that the authorities Plaintiff cites in her opposition are inapplicable to this case.

**LEGAL STANDARD**

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

9 U.S.C. § 2.

Section 2, "the primary substantive provision of the Act," reflects "a liberal federal policy favoring arbitration agreements" and effectively creates "a body of federal substantive law of arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Fifth Circuit has observed that "'[i]n enacting the Federal Arbitration Act, Congress declared a national policy in favor of arbitration. [C]ongress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" Snap-on Tools Corp. v. Mason, 18 F.3d 1261, 1263 (5th Cir. 1994) (quoting Moses H. Cone Mem. Hosp., 460 U.S. at 22).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under the agreement in writing for such

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"The FAA requires district courts to 'compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made.'" Harris, 2008 WL 90038, at *1 (quoting Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1147 (5th Cir. 1985)). In determining motions to compel arbitration, courts conduct a two-step inquiry. Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 248, 254 (5th Cir. 2008); Wash. Mut. Fin. Grp. v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004). The Court first inquires whether the parties agreed to arbitrate the dispute at issue. Id. This inquiry consists of two subsidiary questions: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996). To determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract law. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537-38 (5th Cir. 2003); Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 531 (5th Cir. 2000).

"[T]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." Am. Heritage Life Ins. Co., 321 F.3d at 538. In analyzing arbitrability, courts apply federal substantive law. Grigson, 210 F.3d at 531. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25. If the Court finds that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of the arbitration agreement, the Court inquires whether any federal statute or policy renders the claims nonarbitrable. Wash. Mut. Fin. Grp., 364 F.3d at 263.

**DISCUSSION**

**A. Whether the Parties Formed a Valid Agreement to Arbitrate**

Waffle House argues that the Arbitration Agreement was properly formed and is valid and enforceable under both Georgia and Louisiana law.[3] The Court agrees. See McBride v. Gamestop,

---

[3] The Arbitration Agreement at issue contains a choice of law provision that provides in pertinent part:

[T]his Agreement shall be governed by and interpreted in accordance with the laws of the state of Georgia. If, however, a court of competent jurisdiction or arbitrator subsequently determines that Georgia law does not apply to this agreement, then alternatively, this Agreement shall be governed by and interpreted

Inc., No. 10-2376, 2011 WL 578821, at *2-3 (N.D. Ga. Feb. 8,
2011) (applying Georgia law); La. R.S. 9:4202 ; Coleman v. Jim
Walter Homes, Inc., (La. 3/17/09); 6 So. 3d 179, 182-184
(applying Louisiana law). Moreover, the Court finds that the
Plaintiff's characterization of the issues and her arguments
related to consent and the formation of a valid Arbitration
Agreement are misguided and misleading. Plaintiff has not made
any meritorious arguments challenging either the formation of or
her consent to the written Arbitration Agreement she signed on
September 29, 2009 under either Louisiana or Georgia contract
law.[4] Plaintiff's failure to make any argument to that effect
strikes the Court as a concession that the Arbitration Agreement

---

      in accordance with the laws of the state of my residence.
(Arbitration Agmt., Rec. Doc. 28-2, p. 2, ¶ 13)

      Waffle House argues that the choice of law provision governs and
that Georgia law applies to determine whether the parties formed a
valid, enforceable Arbitration Agreement. Alternatively, Waffle House
argues that the Arbitration Agreement is also valid under Louisiana law.
Plaintiff expressly asserts that there is no choice of law issue (Rec.
Doc. 23, p. 4) ("At the outset it must be noted that there is no
"conflict of law" issue present in this case"), but then implicitly
argues that Louisiana law governs the issue of whether the parties
formed a valid Arbitration Agreement by relying on Louisiana
authorities. (Rec. Doc. 23, p. 7) ("Under Louisiana law, the consent of
both parties is a condition of a valid contract.") Neither party has
briefed the Court on the choice-of-law issue, and it is unnecessary for
the Court to decide which state's law governs the issue, as the Court
finds that the Arbitration Agreement was validly formed whether the
issue is analyzed under Louisiana or Georgia law.

      [4] Plaintiff cites Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202 (5th
Cir. 2012); however, that case is inapplicable. In Carey, the Fifth Circuit
considered whether an arbitration clause was invalid under Texas contract law
on the grounds that it was illusory. Id. at 204-09. Because the question of
whether the Arbitration Agreement was validly formed in this case is governed
by either Georgia or Louisiana law, not Texas law, and Plaintiff is not
arguing that the Arbitration Agreement is invalid because it was illusory,
Carey is irrelevant.

Plaintiff was properly and validly formed, whether formation is analyzed under Louisiana or Georgia law. In addition, Plaintiff's opposition is riddled with implicit concessions that she did consent to the Arbitration Agreement bearing her signature. Plaintiff's assertions that "the record is clear Plaintiff did not consent to the arbitration agreement *during her last employment period...*" (Rec. Doc. 23, p. 6), that she "did not sign any arbitration agreement *again* prior to her last employment term..." (Rec. Doc. 23, p. 8), that "[d]efendants never filed any arbitration agreement that was in effect *during her last term of employment from March 17, 2011 to date of termination,"* and that "*[t]here is no agreement of arbitration signed during that period,"* (Rec. Doc. 23, p. 9) (emphasis added) all presuppose the existence of a prior arbitration agreement. Most importantly, Plaintiff's admission in her affidavit that "I signed an arbitration agreement on 9/29/09 that was recently produced by Waffle House..." (Anderson Aff., Rec. Doc. 25-3, p. 1, ¶ 1) dispenses with Plaintiff's argument that since she "never signed any arbitration agreement after being rehired on March 17, 2011, there was *never any* consent to arbitrate." (Rec. Doc. 23, ¶ 3)

Under Georgia and Louisiana law, Plaintiff's claims that "no one from Waffle House ever communicated to me that I was bound by any arbitration agreements, nor did I understand the arbitration agreement and that I was waiving my right to jury trial,"

(Anderson Aff., Rec. Doc. 25-3, ¶ 2) are insufficient to discharge her from her obligations under the Arbitration Agreement she admittedly signed. Under Georgia law, a person who is able to read is bound by the terms of the contracts she signs, unless she can show that she did not read the document, because: (1) "some emergency existed at the time of signing that would excuse her failure to read it," (2) the other party to the contract misled her by an artifice or device that prevented her from reading it, or (3) "a fiduciary or confidential relationship existed between the parties upon which she relied in not reading the contract." Cochran v. Murrah, 219 S.E.2d 421, 423 (Ga. 1975). Plaintiff is not claiming that she is unable to read. Moreover, Plaintiff is not claiming that she did not read the contract, only that she does not remember signing it, that she did not understand it, and that no one from Waffle House explained to her that she was bound by it. Under Georgia law, it was Plaintiff's duty, not Waffle House's duty, to ensure that she understood the contents of the Arbitration Agreement before signing it. See Int'l Indem. Co. v. Smith, 342 S.E.2d 4, 5 (Ga. Ct. App. 1986) (citations omitted) (explaining that even illiterate people who negligently fail to seek out a reliable person to read and explain the contents of a contract before signing it will be estopped from avoiding the contract on the grounds that they were ignorant of its contents). Consequently, under Georgia law,

13

Plaintiff is bound by the terms of the Arbitration Agreement she signed. <u>Cochran</u>, 235 Ga. at 305-06 (concluding that the literate plaintiff was bound by the contract he signed where he could not show that he satisfied one of the three exceptions). Similarly, under Louisiana law, "[i]t is well-settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." <u>Coleman v. Jim Walter Homes, Inc.</u>, 2008-1221 (La. 3/17/09); 6 So. 3d 179, 183. Thus, Plaintiff is bound by the terms of the Arbitration Agreement she signed under Louisiana law as well.

Moreover, Plaintiff's argument that she did not understand that she was waiving her right to a jury trial is meritless. <u>See</u> <u>Figueroa v. W-W Automobiles, Inc.</u>, No. 402-201, 2002 WL 31992188, at *4 (N.D. Miss. Nov. 5, 2002) (citing <u>Am. Heritage Life Ins.</u> <u>Co. v. Orr</u>, 294 F.3d 702, 710-11 (5th Cir. 2002) (rejecting plaintiff's argument that despite signing an arbitration agreement, he did not knowingly and intelligently waive his right to a jury trial on the grounds that the Seventh Amendment right to trial by jury is limited by a valid arbitration provision waiving the right to resolve a dispute in a judicial forum).

Plaintiff argues that no valid Arbitration Agreement *currently* exists, because the Arbitration Agreement was

14

extinguished when she was terminated on July 7, 2010, and she never executed a new arbitration agreement with Waffle House when she was rehired on March 17, 2011. Thus, the central issue in this case is not whether Plaintiff consented to arbitrate the claims asserted in this action, whether the parties had a "meeting of the minds," or whether a valid Arbitration Agreement was formed, but rather whether Plaintiff's termination extinguished the validly formed Arbitration Agreement.[5]

### B. Whether Plaintiff's Termination Extinguished the Arbitration Agreement

The Court is not persuaded by Plaintiff's argument that her termination extinguished the Arbitration Agreement. Plaintiff's argument directly contravenes the express language of the Arbitration Agreement, which states that it applies to all future claims and that "[t]his Agreement shall survive termination of my employment." (Arbitration Agmt., Rec. Doc. 32-1, p. 3, ¶ 12) This survival clause unambiguously reflects the parties' intent that the Arbitration Agreement would survive any break in Plaintiff's employment with Waffle House. In addition, the Agreement provides the exclusive mechanisms for revoking the Agreement. In

_____

[5] As Waffle House points out, Plaintiff's arguments ignore the fact that there was a "meeting of the minds" between Plaintiff and Waffle House when she signed the September 29, 2009 Arbitration Agreement in which the parties agreed: (1) to arbitrate all "past, present, and future" claims, (2) that the Arbitration Agreement would survive termination of Plaintiff's employment, and (3) that the Arbitration Agreement would remain enforceable until revoked by both parties in writing or superseded by a subsequent arbitration agreement. These provisions collectively absolved the parties of any need to have a *subsequent* "meeting of the minds," which is the only type of "meeting of the minds," that Plaintiff actually argues was lacking in this case.

particular, Paragraph 12 provides "this Agreement can *only* be revoked by a writing signed by both parties which specifically states an intent to revoke this Agreement." (Arbitration Agmt., Rec. doc. 32-1, p. 3, ¶ 12) (emphasis added) Paragraph 15 provides in pertinent part:

> [m]y agreement to accept arbitration can be revoked at any time within 7 days of my signing this Agreement, but such revocation must be submitted in writing and will result in my immediate termination, demotion and/or denial of consideration for employment . . . *If this Agreement is not properly revoked by me within the 7-day time period described above, I understand that this Agreement will remain valid and enforceable unless modified by Waffle House pursuant to Paragraph 12 or unless Waffle House and I execute a subsequent arbitration agreement...*

(Arbitration Agmt., Rec. Doc. 32-1, p. 3, ¶ 15) (emphasis added). These provisions demonstrate that the parties expressly contemplated the contingency that occurred in this case — Plaintiff's termination — and expressly provided that the contingency would not terminate the Arbitration Agreement. Thus, it was unnecessary for the parties to enter into a new Arbitration Agreement when the Plaintiff was re-hired in March of 2011, because the Arbitration Agreement remained in effect following her termination in July of 2010.

Moreover, as Waffle House points out, the authorities that Plaintiff relies upon are distinguishable and non-binding. For example, in the cases that Plaintiff cites to support her contention that the Arbitration Agreement in this case "expired,"

United Teachers of New Orleans v. Orleans Parish School Board,
355 So. 2d 899 (La. 1978) and Litton Financial Printing Division
v. NLRB, 501 U.S. 190 (1991), the general issue was whether a
party to an expired, *fixed-term* collective bargaining agreement
could be compelled to arbitrate a dispute based on an arbitration
clause in the expired collective bargaining agreement. United
Teachers of New Orleans, 355 So. 2d at 899-900; Litton, 501 U.S.
at 205-210. Unlike Litton and United Teachers of New Orleans, the
instant case involves a stand-alone Arbitration Agreement that
did not contain a fixed term and, moreover, explicitly stated
that it would apply to all future claims between the parties and
survive Plaintiff's termination from her employment with Waffle
House.[6]

　　Plaintiff also cites, Matterhorn, Inc. v. NCR Corp., 763
F.2d 866 (7th Cir. 1985) and Frank v. 84 Components Co., No. 02-

---

[6] Moreover, Plaintiff's assertion that the Litton Court held that "an
arbitration agreement was not enforceable after [the] expiration date since no
valid contract existed" misconstrues the Court's holding in Litton. In fact,
in Litton, the Court recognized that disputes which arise under an expired
collective bargaining agreement may be subject to arbitration even in the
postcontract period. 501 U.S. at 205, 208 ("[A]s we found in Nolde Brothers,
structural provisions relating to remedies and dispute resolution - for
example, an arbitration provision - may in some cases survive in order to
enforce duties arising under the contract."). Id. at 208. The Court further
explained that "[a] postexpiration grievance can be said to arise under the
contract only where it involves facts and occurrences that arose before
expiration, where an action taken after expiration infringes a right that
accrued or vested under the agreement, or where, under normal principles of
contract interpretation, the disputed contractual right survives expiration of
the remainder of the agreement." Id. at 205-06. The Court ultimately found
that the dispute in question, which concerned layoffs that occurred after the
expiration of the collective bargaining agreement, was not arbitrable pursuant
to the arbitration provision in the expired collective bargaining agreement,
because it did not "arise under" the collective bargaining agreement. See id.
at 208-10.

14, 2002 WL 1364168 (S.D. Ind. June 18, 2002). Unlike this case, Frank and Matterhorn involved arbitration clauses that were incorporated into other contracts that the parties later cancelled and attempted to supersede. However, here, the Arbitration Agreement stood independent of any other contract,[7] and explicitly stated that it would survive Plaintiff's termination. Thus, the Court finds no reason to conclude that subsequent changes in the parties' employment relationship altered the Arbitration Agreement.

The Court is aware of one non-binding authority indicating that an independent Arbitration Agreement signed by an employee during one employment period may not apply to claims that arise during subsequent periods of employment if: (1) the arbitration agreement does not clearly encompass all future periods of employment following termination; (2) upon rehire, the employee *explicitly refuses to sign* an Arbitration Agreement *and* the employer, as a result of the employee's explicit refusal, waives the requirement; and (3) the events giving rise to the employee's claim occurred after the employee's explicit refusal to sign the arbitration agreement and the employer's waiver. See Mitchell v. J.V. Indus. Cos., Ltd., No. 08-1135, 2008 WL 8444325, at * 2-4 (S.D. Tex. Aug. 11, 2008). However, the facts of this case do not

---

[7] The Arbitration Agreement explicitly states, "[t]his is an arbitration agreement, not an employment agreement." (Arbitration Agmt., Rec. Doc. 32-1, p. 3, ¶ 14)

satisfy <u>Mitchell</u>'s requirements. With respect to condition (1),
for example, the instant Arbitration Agreement *does* clearly
encompass all future periods of employment following termination,
given that it (a) applies to "all claims . . . past, present, *and
future*," (b) "shall survive termination of [Plaintiff's]
employment," and ( c) "will remain valid and enforceable unless
modified by Waffle House pursuant to Paragraph 12 or unless
Waffle House and I execute a subsequent arbitration agreement . .
. ." With respect to condition (2), although Plaintiff asserts
that she "never signed" any arbitration agreement after she was
terminated and rehired (Rec. Doc. 23, pp. 3, 4, 8; Anderson Aff.,
Rec. Doc. 25-3, ¶¶ 1, 2, 5, 14), this does not amount to
*explicitly refusing* to sign a new arbitration agreement, as
<u>Mitchell</u> requires. Given that Plaintiff did not explicitly refuse
to sign a new arbitration agreement, and the fact that the
Arbitration Agreement she did sign applied to all future claims,
it similarly cannot be said that Waffle House waived the
requirements of the Arbitration Agreement when it rehired
Plaintiff. Thus, <u>Mitchell</u> does not persuade the Court to find
that the Arbitration Agreement does not apply here.

### C. Whether Plaintiff's Claims are Within the Scope of the Arbitration Agreement and Whether Any Federal Statute or Policy Renders Plaintiff's Claims Nonarbitrable

The Court finds that all of Plaintiff's claims fall squarely

within the scope of the Arbitration Agreement.[8] Plaintiff has not
argued otherwise. Moreover, as no party has directed the Court's
attention to any federal statute or policy rendering  any of
Plaintiff's claims non-arbitrable, the Court finds that all of
Plaintiff's claims are referable to arbitration. When all of the
issues raised in the district court are referable to arbitration,
district courts have discretion to dismiss cases in favor of
arbitration under 9 U.S.C. § 3. Alford v. Dean Witter Reynolds,
Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (explaining that the
language in Section 3 mandating a stay when a party has commenced
suit upon any issue referable to arbitration pursuant to a
written arbitration agreement was not intended to limit dismissal
when all of the issues raised in the district court are referable
to arbitration); see also Fedmet Corp. v. M/V BUYALYK, 194 F.3d
674, 676 (5th Cir. 1999) ("We have previously held that district
courts have discretion to dismiss cases in favor of arbitration
under 9 U.S.C. § 3.") Because all of Plaintiff's claims are

---

[8] The Arbitration Agreement states that it extends to all claims "past,
present, or future, whether or not arising out of [Plaintiff's] employment or
termination from employment, that [Plaintiff] may have against Waffle House or
against its officers, directors, employees or agents in their capacity as such
or otherwise." (Arbitration Agmt., Rec. Doc. 132-1, p. 1, ¶ 2) Additionally,
it specifies that, "[t]he claims that are arbitrable . . . include but are not
limited to . . . tort claims, claims for discrimination or harassment,
including but not limited to, . . . sex . . . under Title VII of the Civil
Rights Act of 1964 . . . claims for retaliation arising from or concerned with
such laws or statutes . . . claims for violation of any federal, state, or
other governmental law, statute, regulation or ordinance, except claims
excluded elsewhere in this Agreement." (Arbitration Agmt., Rec. Doc. 132-1, p.
1, ¶ 2) (alterations added). Plaintiff has not argued, and the Agreement does
not provide her with any basis to argue, that her claims were excluded
elsewhere in the Agreement.

referable to arbitration, the Court finds that dismissal of the instant suit is appropriate.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration **(Rec. Doc. 19)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned action is **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana this 29th day of January, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

21